UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHAD HOLLOWAY,

      Petitioner,

  -vs-

M. BRADT, Superintendent,

      Respondent.

**No. 11-CV-6401(MAT)**

**DECISION AND ORDER**

## I.   Introduction

Chad Holloway ("Holloway" or "Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. Petitioner is incarcerated at Attica Correctional Facility as the result of a judgment of conviction entered on January 25, 2007, in Monroe County Court of New York State, following a jury verdict of Murder in the Second Degree (New York Penal Law ("P.L.") § 125.25(1)); Burglary in the First Degree (P.L. § 140.30 (1)); and Attempted Robbery in the First Degree (P.L. §§ 110/160.15(2)).

## II.   Factual Background and Procedural History

On May 26, 2006, Petitioner and another man approached a house located at 242 Durnan Street in the City of Rochester where Elvin Reynoso ("Reynoso") was standing in the driveway. Shadora Massey ("Massey") was sitting outside, on the steps of 238 Durnan Street in the City of Rochester and saw Petitioner and another man

approach 242 Durnan Street. Massey lost sight of the men as they walked up the driveway. She then heard a shot and soon thereafter saw the same two men running down the street. She heard Petitioner say, "he shot, he shot." Petitioner was referring to the victim, Elvin Reynoso ("Reynoso"), who died of a gunshot wound to the head. Massey noticed that Petitioner had been shot in his right shoulder, which was bleeding, and that he was carrying a handgun.

Petitioner later admitted to the police that he saw the victim in the driveway and grabbed him by the shirt while holding the gun to the victim's back with his other hand. He pushed the victim towards the door, where a struggle ensued and he accidentally shot the victim in the head, killing him. Petitioner then forced his way into the house, breaking the door jamb in the process. While inside the house, Petitioner was shot in the arm by an individual who was never apprehended. As a result of the gunshot wound, Petitioner bled profusely, spattering blood throughout the house, which belonged to Maria Ramirez ("Ramirez").

That afternoon, at approximately 2:15 p.m., Ramirez was at her brother's house located at 250 Durnan Street. After hearing gunshots and screaming from 242 Durnan, she ran home and saw the fatally injured Reynoso lying on the ground. She had never seen the Reynoso before. Ramirez later found out that the locks to her home had been broken and that someone had entered her home without permission.

The jury returned a verdict convicting Holloway on all counts submitted to it. Holloway was sentenced to an aggregate indeterminate term of 25 years to life. On March 19, 2010, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed Holloway's conviction, and the New York Court of Appeals denied leave to appeal on July 20, 2010. People v. Holloway, 71 A.D.3d 1486 (4th Dept.), lv. denied, 15 N.Y.3d 774 (2010).

This timely habeas petition followed in which Petitioner raises the following grounds for habeas relief, both of which were raised on direct appeal:  (1) the prosecutor's explanation for using two peremptory challenges-that people working in the field of education tend to be more forgiving- was merely a pretext for racial discrimination because the prospective jurors' employment did not relate to the facts of this case; and (2) the trial court committed reversible error and violated his due process rights by declining to give the jury an adverse inference charge based on the refusal of the police to electronically record Petitioner's interrogation.

Respondent answered the petition, arguing that both claims substantively lack merit. Respondent also contends that the first claim is procedurally defaulted based upon the adequate and independent state ground doctrine, and that the second claim is unexhausted but must be deemed exhausted and procedurally

-3-

defaulted. Petitioner did not submit a reply in response to Respondent's opposition papers.

For the reasons that follow, Holloway's request for a writ of habeas corpus is denied, and the petition is dismissed.

## II.  Discussion

### A.    Ground One: Discriminatory Exercise of Peremptory Strikes

#### 1.    Background

Defense counsel asserted a <u>Batson</u>[1] claim on the basis that, during the first round of jury selection, the prosecutor had used all six of his peremptory challenges to exclude women from the panel. Defense counsel then argued that in the second round of jury selection, the prosecutor had used seven peremptory challenges, five of which were against women. <u>See</u> T.145-46.[2] Defense counsel further noted that the only three African-Americans on the panel, who were women, had been peremptorily stricken. T.146.

The prosecutor responded, "8, she is a teacher's aid. It's been my experience that people that work in the education field tend to be more forgiving. Therefore, I exercised [a] peremptory." With regard to "21, she is a teacher with the Pittsford school system and, like [#8], the people in the educational field tend to be more forgiving and therefore I exercised my peremptories."

_____

[1]

<u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).

[2]

Numerals preceded by "T." refer to pages from the transcript of Holloway's trial.

T.147-48.  With regard to the rest of female jurors peremptorily
challenged, the prosecutor struck three jurors because they had
family members or friends who had been criminally prosecuted. One
of three jurors also had been prosecuted. The prosecutor noted that
he had struck two male jurors who had had contact with the criminal
justice system themselves.

> When given an opportunity to comment, defense counsel stated,
>
> Judge I have nothing to add at this point. . . . I would
> note that I do have a librarian on the jury and so the
> idea that someone in education would be more forgiving I
> think is a pretextual reason, but other than that I would
> leave it to the Court, judge. I have a concern again,
> both with respect to female and African American
> representation at this point being systematically
> stricken.

T.148. The trial court then ruled that the reasons proffered by the
prosecutor were "not pretextual and [we]re the genuine reasons for
the disputed challenges. . . ." T.148-49. Therefore, it allowed the
peremptory challenges. Id.

On direct appeal, appellate counsel argued that the proffered
reason for striking jurors 8 and 21–that is, their employment in
the field of education–was pretextual. See Petitioner's Appellate
Brief ("Pet'r App. Br.") at 9 ("Since the categorical exclusion of
individuals based on their employment, where their employment bears
no relation to the facts of the case, is a pretext for racial
discrimination, the court's denial of Mr. Holloway's Batson
challenge deprived Mr. Holloway of a fair trial.") (Dkt. #6-1). The
Fourth Department rejected the Batson claim as unpreserved because

defense counsel had not argued that the prosecutor's reason for excluding those prospective jurors must be deemed pretextual because the prospective jurors' employment did not relate to the facts of Holloway's case. People v. Holloway, 71 A.D.3d at 1487 (citing People v. Cooley, 48 A.D.3d 1091, 1092 (4th Dept.) ("Defendant also failed to preserve for our review his contention that the prosecutor's stated reasons for striking a prospective juror in response to a Batson challenge were pretextual, inasmuch as he 'failed to articulate to . . . [the trial] [c]ourt any reason why he believed that the prosecutor's explanations were pretextual[.]'") (quotation omitted; ellipsis in original), lv. denied, 10 N.Y.3d 861 (2008); People v. Brown, 295 A.D.2d 442 (2d Dept.), lv. denied, 98 N.Y.2d 729 (2002), 99 N.Y.2d 580 (2003) ("The defendant contends that the prosecutor, in response to his Batson challenge, failed to relate the prospective juror's employment as a social worker to the facts of this case. This argument was not asserted before the trial court and therefore is not preserved for appellate review[.]") (citing People v. Stephens, 84 N.Y.2d 990, 991-992 (1994); internal citation omitted)).

### 2. Procedural Default

Respondent argues that the claim is procedurally defaulted because the Fourth Department relied upon an adequate and independent state ground–New York's contemporaneous objection rule–as a basis to dismiss it. "Under the independent and adequate

-6-

state ground doctrine, a federal court sitting in habeas 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991) (emphases omitted); citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).

Here, the state law ground on which the Appellate Division Petitioner's Batson claim was defense counsel's failure to comply with New York's preservation rule, which requires a contemporaneous objection to any alleged legal error at a criminal trial in order to preserve the issue for appellate review. N.Y. CRIM. PROC. LAW § 470.05(2). Although it is clear that reliance on C.P.L. § 470.05(2) sufficed as a state law basis for the Fourth Department's judgment, independent of any federal constitutional issue, there is a question regarding the adequacy of the preservation rule, as applied here, to prevent habeas review. See Lee, 534 U.S. at 375 (noting that "adequacy" of state procedural bars to the assertion of federal rights "is itself a federal question"). Even though a rule generally is firmly established and regularly followed, it still might be inadequate to preclude federal review if its application would be "exorbitant" under the circumstances of the particular case. Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (quoting Lee, 534 U.S. at 376); see also

-7-

<u>Hathorn v. Lovorn</u>, 457 U.S. 255, 262-63 (1982) ("Our decisions, however, stress that a state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed.' State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."); <u>accord</u>, <u>e.g.</u>, <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999).

Under the particular facts of Petitioner's case, there is an issue as to whether defense counsel substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. <u>Cotto v. Herbert</u>, 331 F.3d 217, 240 (2d Cir. 2003) (summarizing <u>Lee v. Kemna</u>, 534 U.S. at 375). Accordingly, in the interest of judicial economy, the Court proceeds to consider Holloway's <u>Batson</u> claim on the merits. <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518, 523 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law").

### 3. Merits

The standard set forth in the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), applies to this case since Roundtree filed his petition after AEDPA's effective date. See

Brown v. Artuz, 283 F.3d 492, 498 n. 2 (2d Cir. 2002). Under AEDPA, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2). Nevertheless, since the Batson claim does not warrant relief under the less deferential pre-AEDPA standard, there is no need to conduct the more intricate analysis articulated in 28 U.S.C. § 2254(d). Cf. Kruelski v. Connecticut Superior Court for the Jud. Dist. of Danbury, 316 F.3d 103, 106–07 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts assess first whether state court's ruling was erroneous under "correct interpretation" of the federal law at issue, then whether the ruling was unreasonable).

In Batson v. Kentucky, the Supreme Court reaffirmed the principle that prosecutors engaging in "racial discrimination in jury selection offends the Equal Protection Clause." 476 U.S. at 85. The Supreme Court later extended the equal protection argument to include gender-based challenges. J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994).

Batson sets out a three-part burden-shifting process to determine whether a particular peremptory strike of a jury panelist was based on an impermissible discriminatory motive in violation of the Equal Protection Clause of the Fourteenth Amendment. 476 U.S. at 96-98. First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." 476 U.S. at 93-94 (citation omitted). Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. Id. at 94. Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." Purkett v. Elem, 514 U.S. 765, 767 (1995) (per curiam). For purposes of this decision the Court assumes, as the Fourth Department did on appeal, that defense counsel established a prima facie case under the first Batson step since the trial court advanced to the second step of the Batson test. See Hernandez v. New York, 500 U.S. 352, 359 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.").

On direct appeal, Petitioner's appellate counsel argued that "the only issue is whether the court properly accepted the prosecutor's reason for challenging the jurors as race neutral and nonpretextual." Pet'r App. Br. at 10. As noted above, the prosecutor stated that "people who work in the education field tend to be more forgiving." T.147. Appellate counsel went on to argue that, as a matter of law, the prosecutor's proffered reason was pretextual because he failed to relate the concerns regarding the jurors' employment in the education field to the facts of the case and failed to articulate the basis for believing the people in the education field tended to be more forgiving. Pet'r App. Br. at 11-12 (Dkt. #6-1). Appellate counsel relied upon intermediate appellate court cases for the proposition that "[w]here a peremptory challenge is based upon a prospective juror's employment, the concerns regarding the employment must be related to the factual circumstances of the case, and the qualifications of the juror to serve on that case[.]" <u>People v. Campos</u>, 290 A.D.2d 456, 457 (2d Dept. 2002) (citing, <u>inter alia</u>, <u>People v. Smith</u>, 266 A.D.2d 570, 571 (2d Dept. 1999); <u>People v. Duncan</u>, 177 A.D.2d 187, 194-95 (4th Dept. 1992) (holding that prosecutor's use of prospective juror's employment to justify peremptory strike was unacceptable because the type of employment was not connected to the facts of case)).

Duncan and the other state case cases cited by Holloway's appellate counsel "do[ ] not, however, depart from the general recognition of employment as a race-neutral reason for exclusion." Mullins v. Bennett, No. 06-0733-pr, 228 Fed. Appx. 55, *56, 2007 WL 1109270, at **1 (2d Cir. Apr. 13, 2007) (citing Duncan, 177 A.D.2d at 194 ("A person's employment or lack of employment may, in an appropriate case, constitute a legitimate race-neutral reason for exclusion."); People v. Wint, 237 A.D.2d 195, 198-99 (1st Dept. 1997)). Federal courts have consistently found that employment can be a valid race neutral reason for striking a prospective juror. See, e.g., J.E.B., 511 U.S. at 142 n. 14 ("[W]here peremptory challenges are made on the basis of group characteristics other than race or gender (like occupation, for example), they do not reinforce the same stereotypes about the group's competence or predispositions that have been used to prevent them from voting, participating on juries, pursuing their chosen professions, or otherwise contributing to civic life.") (citation omitted); Jordan v. LeFevre, 206 F.3d 196, 200 (2d Cir. 2000) (noting that "type of employment" has "been found to be [an] acceptable race neutral bas[i]s for peremptory challenges") (citation omitted)).

Petitioner has not shown a clear violation of New York state law, as appellate counsel noted in her brief that "there is no uniformity of [sic] the courts' treatment of employment-related challenges" among the New York appellate divisions. Pet'r App. Br.

at 10 (Dkt. #6-1). More important, Petitioner has not provided any federal constitutional authority for the proposition that the categorical exclusion of individuals based upon their employment is a pretext for discrimination where the prosecutor does not specifically relate the employment to the facts of the case. See People v. Wint, 237 A.D.2d at 197 (contrasting cases such as People v. Duncan, 177 A.D.2d 187, supra, which hold that "a juror's employment may be a sufficient race-neutral ground to exclude such juror, but only where the concerns regarding the juror's employment are related to the circumstances of the case" with cases such as United States v. Alvarado, 951 F.2d 22, 24-25 (2d Cir. 1991), which "have accepted the view that the nature of a juror's employment might render the juror unduly sympathetic to the defendant, thereby justifying the use of a peremptory challenge"; and collecting similar cases from the Fourth, Ninth, and Eighth Circuits). It is well established that a violation of state law does not by itself rise to a violation of the United States Constitution. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (citation omitted).

Federal courts, including those in this Circuit, have accepted a trial court's factual determination that a prospective juror's employment was a non-pretextual, race-neutral explanation without requiring that the prosecutor relate the type of employment to the facts of the defendant's case. See Alvarado, 951 F.2d at 24-25 (prosecutor gave reasonable race-neutral explanation for exercising

peremptory challenge to exclude minority juror, where juror was excluded because Government alleged that her role as social worker indicated she might be too sympathetic); United States v. Wilson, 867 F.2d 486, 487-88 (8th Cir.) (no pretext in striking juvenile court social worker who had more contacts with defense attorneys than prosecutors), cert. denied, 493 U.S. 827 (1989). "That conclusion, like many others informing peremptory challenges, may be based on a group stereotype, but not one that violates equal protection." United States v. Farhane, 634 F.3d 127, 157 (2d Cir. 2011) (citing J.E.B., 511 U.S. at 142 n. 14 (distinguishing peremptory challenges based on race from those based on occupation)).

In Messiah v. Duncan, 2004 WL 1924971 (S.D.N.Y. Aug. 27, 2004), aff'd, 435 F.3d 186 (2d Cir. 2006), the prosecutor struck a prospective juror, a social worker, stating that he believed his employment background would cause him to be sympathetic to the petitioner. 2004 WL 1924791, at *5. Noting that a determination of pretext is a factual question entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1),[3] the district court in Messiah determined that the trial court's acceptance of the

---

[3]     In the context of a petition made pursuant to 28 U.S.C. § 2254, the state court's determination of whether the use of a peremptory challenge was motivated by discriminatory intent is a factual finding and therefore entitled to a presumption of correctness. Purkett v. Elem, 514 U.S. at 769 (applying former 28 U.S.C. § 2254(d)); Bryant v. Speckard, 131 F.3d 1076 (2d Cir. 1997) (same). A petitioner must rebut this presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

prosecutor's employment-based strike was not clearly unreasonable, since "[t]he prosecutor may have believed that [the juror]'s particular social work would make him more sympathetic to the defendant than white jurors with other types of social work associations." Messiah, 2004 WL 1924791, at *5 (citing Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (citations omitted)). See also Stays v. Herbert, No. 01-CV-2400, 2003 WL 22765352, at *5 (E.D.N.Y. Nov. 24, 2003) (finding "legitimate" the prosecutor's reason for striking a prospective juror, a home health aide, on the grounds that "such aides tended to be very sympathetic, and that one of the defendants, being 'a young kid,' would attract such sympathy") (quotation to record omitted; citing United States v. Alvarado, 951 F.2d 22, 25 (2d Cir. 1991) (accepting prosecution's race-neutral reason for striking prospective juror on basis that her occupation as a social worker made her a less desirable juror). The Second Circuit affirmed, noting that it was "not implausible" for a prosecutor to think that "a social service provider who has dedicated his professional life to helping others might have more sympathy for a defendant" than other prospective jurors. Messiah, 435 F.3d at 200.

The "outcome determinative issue" of the factual determination that must be made at step three of the Batson

-15-

procedure is whether counsel's facially neutral explanation for a peremptory challenge "should be believed." Hernandez, 500 U.S. at 365; accord Messiah, 435 F.3d at 198. A reviewing court must afford the "great deference" to the credibility determination of the trial court on direct review, Hernandez, 500 U.S. at 364, and the deference on collateral review is necessarily greater, see 28 U.S.C. § 2254(e)(1). Here, even applying the less deferential "clearly erroneous" standard applicable on direct review, the rejection of Holloway's Batson challenge to the striking of the two panelists who worked in the education field "is supported by the record," Messiah, 435 F.3d at 201, and was not clearly erroneous.

First, defense counsel did not identify any male jurors in the education field who were not challenged by the prosecutor. Second, it is by no means clear that the librarian who was not peremptorily challenged was "similarly situated" to the prospective jurors in the field of education based upon the librarian's general professional experience. Although the two fields may sometimes overlap, they do not always do so, and Petitioner has not established that they did so in this case.

Finally, as the prosecution argued on appeal, it is reasonable to conclude that a concern about jurors in the education field being more forgiving was related to the facts of the case, given defense counsel's repeated references during summation to Petitioner having been seriously injured during the incident. Part

of the defense theory was that Petitioner was too gravely wounded and in too much pain to make a voluntary statement to the police. The prosecutor reasonably could have decided that he did not want a "too forgiving" juror deciding this issue.

Because the trial court is in the best position to determine the credibility and demeanor of the attorney explaining his peremptory challenge, this Court must defer to state trial court's judgment. Hernandez, 500 U.S. at 364. Even applying a pre-AEDPA standard of review, the trial court did not clearly err in rejecting Petitioner's Batson claim with respect to these two jurors as the prosecutor's reasons were not clearly pretextual. See Messiah, 435 F.3d at 201. Therefore, Petitioner's Batson claim does not warrant habeas relief.

**B.   Ground Two: Failure to Issue Adverse Inference Charge**

**1.   Background**

Petitioner also claims that the trial court improperly refused to issue an adverse inference charge based on the failure of the police to electronically record his interrogation. The Fourth Department held that Petitioner was not entitled to an adverse inference charge because the "failure to record a defendant's interrogation electronically does not constitute a denial of due process. . . ." People v. Holloway, 71 A.D.3d at 1487 (citations omitted). Respondent argues that this claim is unexhausted but should deemed exhausted and procedurally barred because Petitioner

relied solely on state law in his appellate brief and thus failed to present the claim in federal constitutional terms to the state appellate courts. See Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005) (citation omitted).

Here, the Fourth Department, however, explicitly considered the claim under the rubric of due process, and the case law it cited in support likewise engaged in a constitutional analysis. Holloway, 71 A.D.3d at 1487 (citations omitted). A habeas petitioner may apprise the state court of the federal constitutional nature of his claims by, inter alia, "reliance on state cases employing constitutional analysis in like fact situations" and "allegation of a pattern of facts that is well within the mainstream of constitutional litigation. . . ." Smith, 411 F.3d at 348 (quotation omitted). The Court accordingly proceeds to consider the merits of Holloway's adverse-inference claim.

## 2.   Analysis

In determining whether the failure to give a jury instruction warrants habeas relief, the reviewing court must determine that the petitioner was entitled to the requested charge under state law, that the failure to give one resulted in a denial of his federal constitutional right to due process, and that the state court's contrary conclusion constituted an unreasonable application of clear Supreme Court law.  Jackson v. Edwards, 404 F.3d 612, 621

(2d Cir. 2005) (citing 28 U.S.C. § 2254(d)); see also Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001).

With regard to the first question, New York state law does not require the police to electronically record interrogations. As the Fourth Department noted in denying Holloway's appeal, it has repeatedly determined that the failure to record a defendant's interrogation electronically does not constitute a denial of due process. Holloway, 71 A.D.3d at 1487 (citing, inter alia, People v. Malave, 52 A.D.3d 1313, 1315 (4th Dept. 2008)). Petitioner's appellate counsel did not cite any state law decisions in contradiction to the Fourth Department's jurisprudence, but instead attempted to analogize to cases regarding adverse inference charges based upon the prosecution's failure to call a witness. See Petitioner's Leave Application at 3, Respondent's Exhibit ("Resp't Ex.") D. Thus, Petitioner has not demonstrated that he was entitled to such an adverse inference charge as a matter of state law.

Moreover, a number of federal courts have concluded that the federal Constitution does not obligate police officers to record interrogations or confessions. E.g., Linnen v. Poole, 766 F. Supp.2d 427, 454 (W.D.N.Y. 2011) (citing, inter alia, Reinert v. Larkins, 379 F.3d 76, 94 n. 4 (3d Cir. 2004) ("Even if there were such a rule announced in Pennsylvania [that non-recorded statements made during the course of a custodial interrogation should be suppressed because they were obtained in violation of the Due

Process Clause], we, as a federal court sitting in habeas jurisdiction, would not have the authority to review a violation of the state constitution. It therefore goes without saying that, given that there is no right to recorded custodial interrogations under Pennsylvania law, we are certainly not at liberty to create one. Insofar as Reinert invokes the Fifth and Sixth Amendments of the Federal Constitution, he invokes a purported federal right to have a custodial interrogation recorded. He does not, however, cite any authority for this proposition; again there is none."); Ridgley v. Pugh, 176 F.3d 484 (9th Cir. 1999) (habeas claim based on police officer's failure to tape record a portion of petitioner's interrogation "does not state a violation of a federal constitutional or statutory right")).

As Holloway has pointed to no federal precedent standing for the proposition that the failure to videotape police interrogations violates any right guaranteed under the United States Constitution, his federal due process rights necessarily could not have been violated by the trial court's failure to give an adverse inference charge based upon the fact that his interrogation was not electronically recorded. The Fourth Department's decision was not an incorrect application of clearly established Supreme Court law, much less an unreasonable application of that law. See Williams v. Taylor, 529 U.S. 362, 411 (2000) (under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1), "a federal habeas

court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied clearly established federal law erroneously or incorrectly").

## III. Conclusion

For the reasons discussed above, the petition (Dkt. #1) filed by Chad Holloway is dismissed with prejudice. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person. See Coppedge v. United States, 369 U.S. 438, 445-46 (1962).

Any application for leave to appeal in forma pauperis must be made to the Second Circuit Court of Appeals in accordance with FED. R. APP. P. 24(a)(1), (4), & (5). See id. Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

**SO ORDERED.**

S/Michael A. Telesca

_____
            MICHAEL A. TELESCA
            United States District Judge

DATED:      Rochester, New York
            June 11, 2012